ALEXANDER P. BALDWIN et al., executors, &c., of Joseph
Baldwin, deceased,

*v.*

MABEL C. TUCKER et al.

[Filed February 28th, 1901.]

1. A will providing that all the rents, interest and profit of testator's
estate shall be paid to his widow during life, and directing the interest
so accrued to be equally divided among testator's children on the death
of the wife, is sufficient to pass the *corpus* of his personal estate to his
children on the death of the wife, there being no limitation of time as
to the continuance of the bequest of interest and no express disposition
of the principal.

2. Where executors have no interest in testator's real estate, except a
power of sale, the operation of the will on such real estate will not be
construed in an action brought therefor by the executors, where the right
of sale is not in issue.

3. Where a child of testator dies before the latter, the children of the
former are entitled to share in his estate under a provision in the will
that on the death of testator's wife his property is to be equally divided
among his living children or their heirs.

On bill, answers, replication and proofs.

*Mr. Frederic R. Pilch,* for the complainants.

*Mr. Joseph A. Beecher,* for the defendants Baldwin and
Martin.

*Mr. Henry V. Condict,* for the defendants Reid and others.

*Mr. Francis J. Swayze, Mr. Albert C. Pedrick,* and *Mr. George
W. McKenzie* (of the New York bar), for the defendants Bar-
clay and others.

Baldwin *v.* Tucker.

EMERY, V. C.

This bill, filed by the executors of the will of Joseph Baldwin for instructions in the distribution of his personal estate, under his will, raises two question for decision:

*First.* Whether testator died intestate as to the remainder of his personal estate, in which his wife was given an interest during widowhood, which life estate has terminated by her death, and

*Second.* If he did not die intestate, then whether, under the clause of his will which disposes of this remainder of his estate, the children or issue of one of the four children of the testator, who died before the date of the will, receive one-fourth of the estate, or whether the estate is to be divided into three shares between a son and daughter of testator, living at the death of the tenant for life, and the children of a daughter who, though living at the date of the will, died before the termination of the life estate.

As to the *first* question: The will, after directing testator's debts to be paid and appointing executors, bequeathed to his wife a farm in Minnesota and his household furniture in fee, "and also, for the time she shall remain my widow, all rents, interests and profits into and out of my estate," excepting certain property, on Market street, Newark, devised to a son and daughter, from which she was to receive certain quarterly payments during her life. The executors were then authorized to sell all other property of which testator might die seized, at their discretion, the proceeds of sale to be invested in unencumbered real estate, sufficiently productive "to pay interest, &c., so accruing to his wife during life." Next follows the only provision in the will as to the disposition of his estate after the death of his wife, in these words:

"At the death of my said wife the *intest* so *acruing* shall be paid eaqually to my living children, or their heirs, share alike—the children receiving the share coming to my children."

It will be observed that the *corpus* of the estate, as distinct from the interest or income, was not, expressly and in plain

terms, disposed of by this clause, and the question is, whether, considering the bequest to be merely of the interest or income of the estate, which had been previously given to the wife for life, such bequests of the interest, being without limitation as to time, is to be construed as effecting a bequest of the *corpus* to the persons who are legatees of the interest. Upon this point the decisions of our courts have established the rule that a bequest of the interest of personal estate, without any limitation as to continuance, is a gift of the *corpus* which produces the interest. *Craft* v. *Snook, 2 Beas. 121 (Chancellor Green, 1860)* ; *Gulick* v. *Gulick's Executors, 12 C. E. Gr. 498 (Errors and Appeals, 1875)* ; *Hartson* v. *Elden, 5 Dick. Ch. Rep. 522 (Chancellor McGill, 1892)*, and cases there cited at *p. 524*. This settled rule of construction controls this case, so far as relates to the personal estate. Whether the bequest of the "interest so accruing" is to be construed as including the rents and profits of real estate, and whether, if so, a devise of the rents and profits, without limitation, but without other words, is sufficient to create a fee in the devisees, are questions which cannot be considered on this bill. The executors here have no estate or interest in the lands, but only a power of sale, and the jurisdiction of the court, on a bill of this character, in which the question of the existence or exercise of the power of sale has not been raised or presented, extends only to the directions to the executors, as trustees, holding personal estate for distribution. This question of jurisdiction as to the real estate was considered and decided adversely by me in *Robeson* v. *Shotwell, 10 Dick. Ch. Rep. 318, 328 (1897)* ; affirmed on appeal for reasons stated, *Ibid. 824;* and also in *Nelson* v. *Nelson, 12 Dick. Ch. Rep. 118, 122 (1898)*. Treating the clause above referred to as an effectual disposition of the *corpus* of the residuary personal estate, the *second* question is as to the legatees who are, under this clause, intended by the testator to take the personal estate. The direction of the testator is:

"At the death of my said wife, the interest so accruing shall be paid equally to my living children, or their heirs, share alike—the children receiving the share coming to my children."

At the date of the will, April 2d, 1870, the testator had three children living—one son, Alexander P. Baldwin, and two married daughters, Mrs. Emily E. Martin and Mrs. Mary Russell Reid. Another married daughter, Mrs. Margaret A. Barclay, had died in 1866, four years before the date of the will, leaving five children, who survived her and who were living at the date of the will. Three of these children of Mrs. Barclay, the deceased daughter, survived the tenant for life, two died during the lifetime of the tenant for life, each of these two leaving one child, now living and infant defendants in the suit. Mrs. Reid, one of the daughters, who survived the testator, died testate, in 1885, and before the death of her mother, in 1897, leaving four children her surviving. On behalf of the surviving son and daughter of the testator and of the legatees of Mrs. Reid it is claimed that, under the above clause, the children of the daughter who was dead at the date of the will do not take anything, and that the estate is to be divided among the children of the testator living at the date of the will (or of testator's death) and the children of a child then living.

It is insisted on their behalf that the clause in question is a primary or original bequest to testator's children living at the date of the will (or of his death) as a class, and that the bequest to "their heirs" was a subsequent bequest by way of substitution only to the heirs of this class of children in case of the death of any member of this class before the time of distribution, and that no heir of a child of testator can take by way of substitution, unless the parent for whom they are substituted was himself (or herself) intended to take, and capable of taking, as a member of the class of primary legatees. And it is claimed, therefore, that inasmuch as a child who was dead at the time of the will could not be intended as one of the testator's "living children," or "children," at the date of his will (or of his death), the heirs or children of such child, dead at the date of the will, cannot take as substituted legatees. Upon the other hand, it is claimed that the bequest of the testator, "at the death of my wife, to my living children or their heirs," &c., refers to children of testator living at the period of distribution (the death of the wife) or the heirs of any of testator's children then dead, and

Baldwin *v.* Tucker.

is an original and primary gift to two classes of legatees—the first being the children of testator living at the time of distribution, and the second class being the heirs of children of testator then dead, and that this second class includes the issue of all of testator's children who were then dead, as well as of the child deceased at the time of the will, as those of the children then living, but who died before the period of distribution. As to the period of time which was in testator's mind in this gift to "living children," an indication is given in the circumstance that the bequest he intends to make commences with a reference to one period of time—that of his wife's death—and the words now claimed to indicate another period occur in the same clause, and can just as naturally be supposed to refer to the period which was certainly in his mind at the commencement of the bequest. He says, *"At the death of my wife"* the estate "is to be paid equally to my living children," &c. From this connection of the time when the gift was to be enjoyed, with the description of the class of legatees who were to take, and from the absence of any expressions certainly indicating that another time was intended in the description of the legatees, it would seem the most reasonable, if not the only, conclusion that the testator had in his mind, as the "living children" who were to take, the children living at the period of time which was in his mind and which was fixed by his words as the time when they were to take, viz., the time of the wife's death. Upon this branch of the case, the question is whether the testator, by the use of the words "my living children," intended "my [now] living children," referring to the date either of his will or of his death, or whether he intended "my [then] living children," referring to the date of distribution. It is more reasonable, I think, to conclude that only one period of time was intended by the words used throughout the whole clause, if such construction gives a natural meaning and application of the word "living," than to construe the word "living" used as descriptive to refer to another and different time, because such other reference may be inferred from the descriptive word itself. The failure of the testator to indicate clearly, by any other expression, that another or different period was in his mind in the

Baldwin *v.* Tucker.

use of the descriptive word, is, in my judgment, decisive against the right to give this effect to the word "living," which is, of itself, ambiguous upon the point now considered. I hold, therefore, that by the gift of the estate "at the death of my wife to my living children, or their heirs," &c., the testator meant to designate children living at the death of his wife. Assuming this is to be the proper construction of this clause, the next question is, whether the testator intended original and primary bequests to *two* classes of persons—the children living at the wife's death as one class, and the heirs of children then deceased as another. I think two classes of legatees were intended. The clause which seems to me to be convincing, if not conclusive, on this point, as to there being one or two classes, is the direction made by the testator himself as to the manner of the distribution. The division is to be "to my living children or their heirs, share alike—the children receiving the share coming to my children." This last clause can only mean that the *children of my deceased children* receive the share which would be coming to *my* children, if living, and contemplates, clearly, that the children of the deceased children are to take, or may take, in conjunction with the living children, and take as an immediate gift to them, at the death of his wife, if the parent be then dead. By share "coming to my children" the testator must mean the share that *would be coming* to my children, if living, at the time of my wife's death, under the previous devise to living children. And the insertion of the clause relating to the manner of distribution *per stirpes* at the wife's death, shows, I think, that the testator did not contemplate an immediate gift in remainder from the date of his will to his children living, either at the date of his will, or at his death, but a division at his wife's death between his children then living (contingent on their surviving his wife) and the heirs or children of his children who were then deceased. If this be the true construction, and there were two classes of legatees, who were thus to take at the wife's death, the next question is, who comprise the second class—the "heirs" of children then deceased? Are "heirs" of children who died in testator's lifetime included, or only heirs of children who died after the testator and before distribution? Upon this ques-

27

tion, which was the main point in the cause, upon which counsel on both sides submitted an exhaustive collection of cases, the special form of the bequest of the will must always be kept in mind, as a guide in the labyrinth of cases. The gift to heirs or children is here made in the same clause with the gift to the parent; it is a single gift to "my living children or their heirs," and the case therefore differs from that class of cases in which the clause under which the heirs or issue take is made in a subsequent independent clause, which is, in form, apparently a substitutionary bequest only. Under the form of bequest now in hand, the special questions which arise are whether "or" is to be read as conjunctive and not as alternative, and whether the words "or their heirs," after a gift to children living at the date of distribution (as I conclude this to be), include the issue of all the children then dead. There is, in the whole will, no indication, except by this clause, that the testator intends to make a distinction between the heirs of his different children merely because of the date of their parent's death. The distinction between the heirs of different children is based solely on the words used in this clause, and it rests, finally, if it exists at all, upon the conclusion that the testator, in thus describing his children living at the time of his wife's death, or their heirs, intended to exclude the heirs of children deceased at the time of the will. A construction of the will as making such exclusion was described by Sir George Jessel, *In re Smith's Trusts, 5 Ch. Div. 497 note (1877)*, as imputing to the testator a capricious intention to make a distinction between the heirs of his children, depending solely on whether they died before or after him. The absence of any indication elsewhere in the will of the express intention to discriminate, has always been given weight in the construction of clauses which are claimed to create it, but which admit of a construction equally natural and reasonable which does not create the distinction. *Outcalt v. Outcalt, 15 Stew. Eq. 500, 501 (Chancellor Runyon, 1887)*. In the absence of indications of intention to discriminate between the heirs of different children, merely by reason of the dates of their death, and in cases where the form of bequest resembles the present, the rule established by the weight of the

authorities, as well as upon principle (so far as any rule of construction can have weight, in the ascertainment of the meaning of the words used by the testator in the particular will to be construed), is the one stated by *Theob. Wills (4th ed.) 540,* as the result of the cases:

"A gift to children living at the period of distribution, or *their* issue, will be construed as a gift to the children then living, and the issue of those then dead, including the issue of those dead, at the date of the will, but not, it would seem, of those who were dead befor testator was born."

He also says (*Ibid.*): "If there is anything to show that the original and substituted classes are to take co-ordinately, 'or' will be read 'and.'" In the following English cases, cited by *Theob. Wills, supra,* being some of those referred to by counsel, the gifts to the heirs were, as here, by a single clause, the word "or" was read as conjunctive, and heirs of children were held to include the heirs of children dead at the date of the will. In *King* v. *Cleaveland, 26 Beav. (Romilly, M. R., 1858),* the bequest was to the children of testator's brother, or their legal representatives. In re *Philips' Will, 7 Eq. 151 (Romilly, M. R., 1869),* the direction was after the death of testator's wife, to divide a sum among his children then living, or their heirs. In re *Sibley's Trusts, 5 Ch. Div. 494 (Jessel, M. R., 1877),* a leading case thoroughly discussing the question as to how far authorities aid decision in this class of cases, there was a gift of real estate to A. for life, and then, in trust, to sell and hold proceeds for all and every the children of F., or their issue, in equal shares. In other cases of bequests by a single clause the word "and" was used in a single clause, instead of "or," but "children" was construed as including the children dead at the date of the will. *Clay* v. *Pennington, 7 Sim. 370 (Vice-Chancellor Shadwell, 1835); Tytherleigh* v. *Harbin, 6 Sim. 329 (1835).* In *Parker* v. *Tootal, 11 H. L. 143 (1865),* a different rule was applied to a bequest to "my *daughters,* and their children."

The wills construed in our own courts, so far as I have been referred to the decisions, are those where the issue or heirs took

Baldwin *v.* Tucker.

under a subsequent independent clause, but the same construction was followed. In *Outcalt* v. *Outcalt, 15 Stew. Eq. 500 (Chancellor Runyon, 1887)*, the testator, "after the death of his wife," directed that the residue of his estate should be divided

"among my several children, share and share alike, and in the event of any of my *said* children dying before my wife and leaving issue them surviving, such issue shall be entitled to receive the parent's share, the same as said parent would receive were he or she living."

The issue of a child who was dead at the date of the will were held to be included, and it was held that by "my several children" testator did not mean his several children then living, but meant all of his children. *A fortiori,* where the gift to the children or their heirs is made, as here, by a single clause, it must be presumed that the testator had in mind the heirs of all his children.

The argument most strenuously urged for the exclusion of the heirs of a child deceased at the date of the will is that the words *"their heirs"* refer, and must refer, not to "children," but to "living children," as their antecedent, and therefore cannot include the heirs of any child deceased. But, as above pointed out, the real question is whether, by a gift after the death of his wife "to my living children," the testator meant "my [now] living children," or "my [then] living children." By making the gift not immediate, but to take effect and be enjoyed at a future time, the testator has rendered the expression "my living children" ambiguous, but as it must, upon the whole will, be referred to some time, the question is at what time did testator intend to refer to his children as "living." If he meant children living at the date of the will, and those only, then *"their heirs"* refers to these "living children." If, on the other hand, he meant either living at the date of his death, or at the date of distribution, then *"their heirs"* refers to *"children"* as its only antecedent, for there could be no "heirs" to a child living at either of those periods, nor could the testator be presumed to have intended a gift to the heirs of a "living child."

My conclusion is that the heirs of a child of testator who

was dead at the date of the will are entitled to one-fourth of the personal estate. If there is any question as to who constitute these heirs of Mrs. Barclay, who take the bequest, I will hear counsel on that point.