The question at issue is the interpretation of the second codicil to the will of Catherine Ruchsman, deceased.
Testatrix had had five children by her first marriage and four by her second marriage. In 1911, when her will was executed, both husbands were dead. Of the children by the first marriage, Mary, John and William were living and Jacob and Catherine were dead, each leaving children. Of the children by the second marriage Louisa was living and Frederick, Philip and Anna were dead, the latter also leaving children.
By the will she gave to John a house and lot of the value of about $4,000, with a gift over to his widow and children if he predeceased her; to William a house and lot worth about $3,000, with a similar gift over, and to Mary a $2,000 legacy. To Louisa she gave a house and lot worth about $2,000 and $1,500 in money, with a similar gift over. These were the only living children. To the children of Jacob (deceased) she gave $2,000; to the children of Catherine (deceased) $2,000, and to the children of Anna (deceased) $2,000. The other two children had died unmarried. She had conveyed to Jacob, some years earlier, a house and lot worth about $2,300. The residuary estate was left to the four living children by name.
In March, 1919, she executed a codicil, whereby she revoked the gift to William (who had died unmarried in the meantime), and gave it to the children of Anna (deceased), revoking the previous gift to them of $2,000. She cut off $500 from the legacy to Louisa, and revoked the $2,000 legacy to Mary, to whom she had in the meantime conveyed *Page 516 
a house and lot worth about $2,500. The residuary estate she gave to the three then living children by name.
In July, 1919, she executed a second codicil, amending the residuary clause so that it should read as follows:
"All the rest, residue and remainder of my estate, real, personal and mixed, I give and bequeath and devise unto my children to be divided equally between them, and if any child died [sic] leaving issue, the share of such child shall be divided among such children."
John, Mary and Louisa were still living; each of them was married and had children living. The residuary estate consisted of realty and personalty aggregating about $12,000 net.
John, Mary and Louisa survived testatrix, and claim the entire residuary estate; on the other hand, the children of those children of testatrix who predeceased their mother claim to be entitled to share in the residuary estate, together with the living children of testatrix.
The dispute arises as to whom testatrix intended by the words "children," "child," "child" and "children," as the words, respectively, appear in the quoted portion of the second codicil.
It is conceded by all that the word "children" at the end of the paragraph refers, not to children of the testatrix, but to her grandchildren (either some or all of them); in other words, that the residuary estate is not to go to the children of testatrix and the survivors or survivor of them. It would appear that there can be no doubt as to this, for the testatrix has specified only the contingency of a child dying without issue. If she had intended to create the right of survivorship amongst her then living children, assuredly she would have had that intent in the event of a child dying without leaving issue.
At first impression, on the reading of the paragraph in question, one might well conclude that testatrix probably intended a gift to her then living three children, with a substitutionary gift to the children of any of the three who might predecease the testatrix leaving issue; that the word *Page 517 
"died" was a clerical error or an inadvertence for the word "die." It will be observed, however, that the preliminary language of the codicil expresses the specific purpose of the codicil as being to "alter and amend the residuary clause" theretofore existing in the testatment; that the language of the residuary clause in the original will and in the first codicil is clear and unambiguous and under the twenty-second section of the Wills act (in force at, and long before, and ever since, the execution of the original will), the effect of the residuary clause of the first codicil would be precisely what the second codicil seems at first to mean, so that there was no necessity for alteration or amendment unless testatrix desired to change that effect, and that the second codicil was drawn by counsel learned in law, a man of excellent standing at the New Jersey bar, who had also drawn the will and first codicil.
It is reasonable to presume, therefore, that testatrix did not mean that the residuary estate was to go to the three living children with substitutionary gifts over to the children of any who should predecease her (as is the contention of complainants), and we have already seen that she did not mean a gift to her living children with the right of survivorship amongst them.
The only other natural disposition for her to make, and the only other one which is possible under the language she has used, is a gift of the residue in equal shares to and among those of her own children who should be living at her death and the respective children of her children who should then be dead (including those who were dead at the time of the making of the codicil).
That this was the intention of testatrix, and is the true interpretation of the clause in question, seems certain. Where there is a testatmentary gift to a class with a provision that the issue of any of the class dying before the period of distribution shall take the share their parent would have taken if then living, the gift is to be construed to be to the issue of any of the class who were already dead at the date of the *Page 518 
will as well as to the issue of any who died later, unless, of course, the will, as a whole, shows a contrary intention. Such is the law as determined by Chancellor Runyon in Outcalt v.Outcalt, 42 N.J. Eq. 500. See, also, Baldwin v. Tucker,61 N.J. Eq. 412 (affirmed, 64 N.J. Eq. 333, on Vice-Chancellor Emery's opinion), where a very similar determination is made on the basis of similar principles. The reasons underlying these determinations are set forth fully in the cases cited and need not here be repeated.
In the present case no contrary intention appears from other portions of the will to prevent the operation of the rule just mentioned. On the contrary, it is evident from the whole will and the surrounding circumstances that the testatrix had a general purpose of distributing her entire estate in portions approximately equal (or roughly so) among her living children and the families of her deceased children. That purpose she had partly effectuated by gifts inter vivos, and the design of the will, as modified by the codicils, was to complete the scheme.
It is unnecessary, therefore, to consider certain testimony which was objected to as being equivalent to testimony of oral declarations of intention, the effect of which, if deemed admissible, would be further to buttress the conclusion already reached.
The argument of complainants, based on the ordinary meaning of the word "if," would have more weight if the paragraph were in the phraseology of the testatrix herself, although even then it is seriously to be doubted if it would be sufficient to overcome the other factors in the case. Here, however, it was the language of counsel (and counsel who, it may fairly be presumed, was familiar with the law of the cases hereinbefore cited). "If," as similarly used in wills, has not infrequently been construed to mean "when," and "in the case of." Its connotation is by no means limited to a condition of absolute uncertainty.
Counsel may be heard, on notice, on the question of costs and allowances. *Page 519