LADD et al. v. WHITLEDGE et al.
(No. 1355.)

(Court of Civil Appeals of Texas. Amarillo. May 15, 1918. Rehearing Denied June 19, 1918.)

1. TRIAL ⬦⫸398 — CONCLUSIONS OF LAW — CONFORMITY TO FINDINGS OF FACT.
In suit for partition, involving construction of item of will, if trial court did not consider facts set out in its findings in its conclusion of law in construing item as to whether it contained a latent ambiguity requiring extrinsic evidence to explain, its failure was error.

2. WILLS ⬦⫸487(2) — CONSTRUCTION — PAROL EVIDENCE.
Parol evidence of circumstances surrounding testator is admissible that his will may be read in the light of the conditions existing around him.

3. WILLS ⬦⫸489(1) — CONSTRUCTION — PAROL EVIDENCE.
If consideration of parol evidence tending to explain the expression whereby testatrix designated devisees was necessary in order to enable the court to reach a proper understanding of the item of the will, the court was required to consider it.

4. WILLS ⬦⫸531(4)—CONSTRUCTION—PERSONS ENTITLED—PER STIRPES.
Where testatrix devised in equal parts to F. W. and the living children of D. A., deceased, "or their heirs," testatrix being adopted daughter of sister of D. A., and having inherited from her adoptive mother, F. W. and living children of D. A.'s four children, and heirs of D. A.'s deceased children were each entitled to a fifth per stirpes.

5. DESCENT AND DISTRIBUTION ⬦⫸21 — "HEIR."
"Heir" means the person applied by law to succeed to a decedent's estate in the case of intestacy.
[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heir.]

Appeal from District Court, Montague County; C. F. Spencer, Judge.

Action for partition, by C. F. Ladd and others against Fannie G. Whitledge and another. From judgment for defendants, plaintiffs appeal. Reversed, and remanded, with instructions.

Cook & Hall, of Montague, and D. A. Haggard, of Cheyenne, Wyo., for appellants. Bryan Stone & Wade, of Ft. Worth, for appellees.

HALL, J. This action was brought by appellants against Fannie G. Whitledge and Henry Avery, and involves the construction of item 7 of the will of Mrs. Emma E. De Pew. The prayer is for partition of certain real estate in Montague county, Tex. Plaintiffs alleged that they are entitled to a three-fifths undivided interest in the land jointly with defendants under item 7 of the will. The substance of the findings of fact filed by the trial court is as follows: Testatrix, Emma E. De Pew, of Indianapolis, Ind., executed her will on the 30th day of December, 1911, item 7 of which is as follows:

"I give and devise to Fannie G. Whitledge and to the living children of Daniel Avery, deceased, or their heirs, said Fannie G. Whitledge and said children to share alike in equal proportional parts, three hundred and twenty (320) acres of land in Montague county, Texas, known on the map of the Texas Immigration & Land Company's survey as survey No. 2863."

Testatrix died April 24, 1913. Her will was duly probated in Indiana, and a copy of the will, with all orders, duly filed and recorded in Montague county, Tex. Daniel Avery, mentioned in item 7, had four children, as follows: Mrs. Sarah Avery Ladd, Mrs. Frances Avery Haggard, Daniel Avery, Jr., and Henry Avery. All except Henry Avery were dead when Mrs. De Pew made her will, but each left children surviving them who are

plaintiffs in this cause. The testatrix was the adopted daughter of Mrs. Frances Avery Ely, and that Mrs. Ely was a sister of Daniel Avery, deceased. That testatrix inherited the Montague county land from her adoptive mother, and that testatrix is not related to any of the parties in this suit, except as the adopted daughter of Mrs. Frances Avery Ely. The children and grandchildren of Daniel Avery, deceased, lived in different states, and none of them lived in Indiana. That Daniel Avery, Jr., died 2 years before the date of the will of testatrix, but that she did not know he was dead at the time the will was written. That Henry Avery was practically unknown to testatrix. That she had no personal acquaintance with any of the grandchildren of Daniel Avery, deceased, but had corresponded with Miss Laura Haggard, one of the grandchildren of Daniel Avery, and the daughter of Frances Avery Haggard, in terms of friendship and affection, from July 18, 1907, until the death of testatrix. That during this period the correspondence was continuous, letters passing about once a month between them, usually addressing each other as "My dear cousin" and closing the letters with "Lovingly your cousin." That on Christmas last before the death of testatrix she sent Miss Laura Haggard a booklet, in which she had written, "With love to my dear cousin from Emma E. De Pew." That Miss Laura Haggard now has in her possession two miniature paintings of the adoptive mother and father of testatrix, given to her by the executrix of the will, one framed in gold and the other in silver. That Frances Avery Haggard was the namesake of the adoptive mother of testatrix. That testatrix and Frances Avery Haggard had corresponded, for at least 5 or 6 years before the death of the latter, in friendly and affectionate terms. That testatrix had directed that at her death the miniatures above mentioned should be given to Frances Avery Haggard, and that said executrix, knowing the fondness of testatrix for Frances Avery Haggard, and her daughter Miss Laura Haggard, had sent these miniatures to the latter. That testatrix was 76 years of age at the time she executed her will, but there is no evidence that she did not possess all of the necessary faculties to make a will, and no evidence that she did not make the will as she wished. Upon these facts the court concluded that the will is plain and unambiguous, and that the living children and the heirs of Daniel Avery should recover under item 7, and that Henry Avery, being the only living child of Daniel Avery, deceased, should share the land in question equally with Frances G. Whitledge. It appears that Mrs. Emma De Pew, testatrix, lived in Marion county, Ind., at the time of the execution of her will; that she died on the 24th day of April, 1913; that she was the adopted daughter of Frances Avery Ely, and the latter was a sister of Daniel Avery, deceased. There is no statement of facts in the record. The will copied in the record disposes of an estate amounting to about $50,000, to a great many different people, one item providing for the erection of a fountain in the city of Indianapolis.

[1] The first assignment is that the court erred in its construction of item 7 of the will, and in refusing to consider plaintiff's testimony tending to explain the expression, "the living children of Daniel Avery, deceased, or their heirs," which appellant contends is uncertain, creating a latent ambiguity, requiring extrinsic evidence to explain. The court found the facts set out above. In the conclusions of law the court said:

"I conclude as a matter of law that the will is plain and unambiguous, and that this court would have to travel too far away from the wording thereof to give it any other construction than that the living children and heirs of Daniel Avery should recover under item 7," etc.

[2, 3] We are unable to determine whether the court considered the facts set out in the findings or not. If they were not considered, we think this was error, and if they were considered the court's conclusion of law is error. As said in the early case of Hunt v. White, 24 Tex. 652:

"It is competent to admit parol evidence, as it is sometimes, though not very accurately expressed, to explain a will (or other written instrument) by showing the situation of the testator in his relation to persons and things around him, or, as it is often expressed, by proof of the surrounding circumstances, in order that his will may be read in the light of the circumstances in which he was placed at the time of making it. His intent must be ascertained from the meaning of the words in the instrument, and from those words alone; but, as he may be supposed to have used language with reference to the situation in which he was placed to the state of his family, his property, and other circumstances relating to himself individually, and to his affairs, the law admits extrinsic evidence of those facts and circumstances to enable the court to discover the meaning attached by the testators to the words used in the will, and to apply them to the particular facts of the case. For this purpose, every material fact that will enable the court to identify the persons or things mentioned in the instrument is admissible, in order to place the court, whose province it is to determine the meaning of the words, as near as may be, in the situation of the testator, when he used them in making his will."

As said in 40 Cyc. p. 1439:

"Where a beneficiary under a will is not designated with precision, parol evidence is generally admissible to show who was intended. * * * So also in a case of latent ambiguity parol evidence is permissible to explain who the testator meant by a particular expression of relationship, or to show who was included in a class named in a will."

See 3 Jones on Evidence (Horwitz) § 477; Schouler on Wills (5th Ed.) § 588 et seq.

[4, 5] If the consideration of this evidence was necessary in order to enable the court to arrive at a proper understanding of this item of the will, the rules above quoted re-

quired the court to consider it, but we are not so sure that any evidence was necessary. The devise is to Fannie G. Whitledge and to the living children of Daniel Avery, deceased, or their heirs. If the word "living" had not been used it would have been clear that the heirs of the deceased children of Daniel Avery would have shared per stirpes. It was stated in argument by the attorneys representing both parties that the will was drawn by an expert in such matters. Bouvier's Law Dictionary (3d Revision) vol. 1, p. 1432, in defining the word "heir" says:

"In its strict and technical import, applies to the person or persons applied by law to succeed to the estate in case of intestacy. * * * No person is heir to a living person. A person occupying a relation which may be that of heirship is, however, called heir apparent or heir presumptive. 2 Bla. Com. 208."

Construing the language of this item strictly, the devise is to the living children of Daniel Avery and the heirs of his deceased children. The direction of the testatrix that Fannie G. Whitledge and said children are to share alike in equal proportional parts must be construed as meaning that Fannie G. Whitledge and living children of Daniel Avery shall each take one-fifth of the tract of land, and that the heirs of Daniel Avery's deceased children shall inherit per stirpes. We think the evidence introduced settles beyond question the correctness of this holding. The testatrix had inherited the property as an adopted daughter, and it may be inferred that she was desirous of placing the property in the possession and ownership of all parties related to her adoptive father and mother. No reason is shown why she should give the entire estate to Henry Avery to the exclusion at least of Laura Haggard, the daughter of Frances Avery Haggard, with both of whom it is shown she had for years kept up a regular correspondence, and with whom she was upon terms of real intimacy and affection. The court found that Henry Avery was practically unknown to the testatrix. It was not shown that he was in indigent circumstances, or that appellants were well supplied with this world's goods. In order to exclude the appellants from participating in the property the court must necessarily have substituted the word "and" for the word "or," resulting in construing the word "heirs" as one of limitation, or else he must have excluded altogether the clause "or their heirs." The remaining assignments raise practically the same question, and an extended discussion of the rules governing the construction of the language in wills similar to that under consideration now may be found in the following authorities: Linton v. Laycock, 33 Ohio St. 128; Travers v. Reinhardt, 205 U. S. 422, 27 Sup. Ct. 563, 51 L. Ed. 865; 30 Am. & Eng. Enc. of Law, 815; Baldwin v. Tucker, 61 N. J. Eq. 412, 48 Atl. 547; Jarmon on Wills (5th Ed.) pp. 777, 778; Hayward v.

Barker, 113 N. Y. 366, 21 N. E. 142; Bronson v. Est. of Phelps, 58 Vt. 612, 5 Atl. 552; 1 Redfield on Wills, 486.

No good purpose can be subserved in prolonging this opinion. We think the court is clearly in error in construing item 7. The judgment is reversed, and remanded, with instructions that Mrs. Fannie G. Whitledge and Henry Avery each take one-fifth of the land in controversy, and that one-fifth be partitioned to the heirs of each Sarah Avery Ladd, Frances Avery Haggard, and Daniel Avery, Jr., the appellants herein, said appellants taking per stirpes. Reversed and remanded with instructions.

HUFF, C. J., not sitting, serving on committee of judges assisting the Supreme Court.

⊂∞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes