

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS

GERALD C. MANN

PERFORMANCE
ATTORNEY GENERAL

Mrs. B. B. Sapp, Director and Executive Secretary
Teacher Retirement System of Texas
Austin, Texas

Dear Mrs. Sapp:

Opinion Number O-3434
Re: Payment of accumulated con-
tributions of member of
Teacher Retirement System
who died before retirement.

We have received your letter of recent date in which you ask the opinion of this department on a question concerning the proper person to whom the accumulated contributions of a deceased member of the Teacher Retirement System should be paid.

Subsection 6, Section 5, of the Teacher Retirement Act (Article 2922-1, Vernon's Annotated Civil Statutes) contains the following provision:

"Should a member die before retirement, the amount of his accumulated contributions standing to the credit of his individual account shall be paid as provided by the laws of descent and distribution of Texas unless he has directed the account to be paid otherwise."

Sister Cecile Mary Watters was a member of the Teacher Retirement System. Under the authority of the above quoted provision she designated as beneficiary "Reverend Mother Bonaventure General." After Sister Cecile's death, but before the money could be paid to Reverend Mother Bonaventure, the Reverend Mother died.

Reverend Mother Bonaventure was Superior General of the congregation of the Sisters of Charity of the Incarnate Word, a Catholic religious order which has its headquarters in San Antonio, Texas. Reverend Mother Bonaventure was her religious name. Her successor in office as Superior General is Reverend Mother Laserian. You wish to know whether the contributions should be paid to Reverend Mother Laserian or to the heirs of Reverend Mother Bonaventure, assuming she died intestate, under our statutes of descent and distribution. Title 48, Vernon's Annotated Civil Statutes; Opinion No. O-2009.

Mrs. B. B. Sapp, page 2.

We cannot give a catagoric answer to your question. In the first place, this department is not empowered to pass upon questions of fact. In the second place, we have been unable to find any cases directly in point. However, in view of the conclusion which we reach, a catagoric answer is not necessary.

We believe that it is proper to resort to cases involving the construction of wills and to draw an anology between those cases and the situation under consideration.

It is well established that if under a will a beneficiary is not designated with precision, or if the designation is undertain or ambiguous, extrinsic evidence or circumstances surrounding the testator may be resorted to in order to identify the legatee or devisee. Lightfoot v. Poindexter (Writ of error refused), 199 S.W. 1152; Ladd v. Whitledge (Writ of error refused), 205 S.W. 463; Methodist Orphanage of Waco v. Buckner's Orphans' Home of Dallas, et al. (Writ of error dismissed), 261 S.W. 203; 69 C.J. 152; 44 Tex.Jur.792.

We quote the following from the opinion of the court in Ladd v. Whitledge, supra:

> "It is competent to admit parol evidence, as it is sometimes, though not very accurately expressed, to explain a will (or other written instrument) by showing the situation of the testator in his relation to persons and things around him, or, as it is often expressed, by proof of the surrounding circumstances, in order that his will may be read in the light of the circumstances in which he was placed at the time of making it. His intent must be ascertained from the meaning of the words in the instrument, and from those words alone; but, as he may be supposed to have used language with reference to the situation in which he was placed to the state of his family, his property, and other circumstances relating to himself individually, and to his affairs, the law admits extrinsic evidence of those facts and circumstances to enable the court to discover the meaning attached by the testators to the words used in the will, and to apply them to the particular facts of the case. For this purpose, every material fact that will enable the court to identify the persons or things mentioned in the instrument is admissible, in order to place the court, whose province it is to determine the meaning of the words, as near as may be, in the situation of the testator, when he used them in making his will."

Mrs. B. B. Sapp, page 3.

In the case of Grubb v. Anderson (Writ of error dismissed) 36 S.W.(2d) 847, the court had before it the construction of a will. The court, speaking through the present Chief Justice of our Supreme Court, used the following language:

> "* * *The courts in determining the intent of the testator will look to the language used in the purported will, his situation at the time of the making thereof, as well as his conduct with reference thereto thereafter * * *."

* * * * * * * * * * * * * * *

> "* * *It is true that parol testimony is not admissible to contradict the terms of a will nor to show an intention evidenced by other language not used therein, yet extrinsic evidence is admissible to show the situation of the testator in relation to persons and things around him in order that his will may be read in the light of the circumstances in which he was placed at the time of making it. The law admits such testimony to enable the court to discover the meaning attached by the testator to the words used in the will, and for this purpose every material fact that will enable the court to identify the person or things mentioned in the instrument is admissible in order to place the court in the situation of the testator when he used the words in the will."

And our Supreme Court in the case of Hassell et al., v. Frey et al., 117 S.W.(2d) 413, made the following statement.

> "In order to ascertain the intention of the testator expressed in a will, the language used therein may be construed in connection with the surrounding facts and circumstances existing at the time the will was made. If necessary, parol testimony may be heard to gather the true intention of the testator expressed in such will; and such intention, if legal, must prevail."

See also Federal Land Bank of Houston v. Little (Com.App.) 107 S.W.(2d) 374; Ellet v. McCord (Writ of error refused), 41 S.W.(2d) 110.

Mrs. B. B. Sapp, page 4.

As we have heretofore mentioned, the designation in question was to "Reverend Mother Bonaventure General." Reverend Mother Bonaventure was her religious name. "General" obviously referes to the office of Superior General. You wish to know whether it was intended by the member that the contributions were to be paid, in the event of her death, to Reverend Mother Bonaventure as an individual or to the person holding the office of Superior General. We believe that there is sufficient uncertainty, in view of the foregoing authorities, to authorize the Teacher Retirement Board to resort to extrinsic evidence in order to clarify the designation.

Sister Cecile was a member of the congregation. All members of the congregation take vows of poverty upon becoming members and are unable under the laws of the church to own any property individually. The facts may show that Sister Cecile as a member of the congregation was cognizant of the church rules at the time of the designation, and thus knew that the Reverend Mother could own no property individually. This would certainly indicate an intention to designate the office or successor in office rather than the individual as such.

We are informed that the congregation is willing to provide an indemnity agreement fully protecting everyone against all liability. You are respectfully advised that should the Teacher Retirement Board make such a determination as outlined in the preceding paragraph, you would be authorized to pay the contributions to Reverend Mother Laserian, Superior General of the Congregation of the Sisters of Charity of Incarnate Word. Such an indemnity agreement would protect the Board from further liability.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

BY
s/ George W. Sparks
George W. Sparks
Assistant

APPROVED AUG 17, 1942
s/ GROVER SELLERS
FIRST ASSISTANT ATTORNEY GENERAL
SW:s:vmb

APPROVED
OPINION COMMITTEE
BY RWG, CHAIRMAN