**Reversed and Remanded and Opinion filed December 14, 2017.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00945-CV

---

## EDNA ARCHER, HADEN BEARDSLEY, AND SARAH KATHRYN PACHECO, Appellants

## V.

## JANICE MOODY, LINDA MOODY, ELIZABETH MOODY, W.L. MOODY, V, AND MOODY NATIONAL BANK, AS TRUSTEE, Appellees

---

**On Appeal from Probate Court**
**Galveston County, Texas**
**Trial Court Cause No. PR-0076077**

---

## O P I N I O N

Three remainder beneficiaries of a trust challenge the Galveston County Probate Court's final judgment interpreting the trust instrument.

The probate court concluded that the trust instrument directed a per capita distribution of the trust estate to the remainder beneficiaries upon the trust's

termination and applied a per stirpes distribution to the descendants of a deceased remainder beneficiary. We reverse and remand because the trust instrument's distribution of the trust estate upon termination "in equal shares per stirpes" contemplates a distribution to the remainder beneficiaries based on their deceased ancestors' shares. Because the beneficiaries descend from three siblings, the trust instrument directs that the trust estate initially must be divided into three shares; the beneficiaries' shares are computed based upon the 1/3 interest of each of the three siblings from whom the beneficiaries are descended.

## BACKGROUND

The litigants in this declaratory judgment action are remainder beneficiaries of a trust that W.L. Moody, Jr. created in 1934. The trust corpus is a 15,000-acre ranch located about 100 miles northwest of San Antonio near Junction, Texas. *See generally Myrick v. Moody Nat'l Bank*, 336 S.W.3d 795, 796-97 (Tex. App.— Houston [1st Dist.] 2011, no pet.).

W.L. Moody, Jr.'s son was W.L. Moody, III, who in turn had three children. The last surviving child was W.L. Moody, IV ("Bill Moody"). The parties agree that the trust terminated when Bill Moody died in 2014.

Bill Moody had four children. His two siblings were Edna Moody and Virginia Moody, each of whom had two children.

The appellants come from the Edna and Virginia wings of the Moody family. Edna Archer is Edna Moody's daughter.[1] Sarah Kathryn Pacheco is Virginia Moody's daughter; Haden Beardsley is the son of Virginia Moody's other daughter, who is deceased. We refer to them collectively as the "Edna and Virginia Moody

---

[1] This court dismissed the appeal of Edna Moody's son, David Myrick, on his motion after he settled his claim.

2

Appellants."

The appellees are Bill Moody's four children: Janice Moody, Linda Moody, Elizabeth Moody, and W.L. Moody, V. We refer to them collectively as the "Bill Moody Appellees."[2]

The family tree relevant to this appeal appears as follows:



The remainder beneficiaries are W.L. Moody, III's grandchildren: David Myrick, Edna Archer, Virginia Beardsley (deceased and survived by Haden Beardsley), Sarah Kathryn Pacheco, Janice Moody, Linda Moody, Elizabeth Moody, and W.L. Moody, V (deceased). The legal dispute focuses on how to calculate the fractional shares of the trust estate allocable to the remainder beneficiaries when the trust terminated in 2014.

The Edna and Virginia Moody Appellants interpret the trust instrument to

---

[2] Appellee Elizabeth Moody appears pro se in this appeal and did not file a brief. Appellee W.L. Moody, V died in 2016. Craig Janek was appointed and has qualified to serve as Independent Executor of the Estate of W.L. Moody, V, deceased. Moody National Bank is the trustee of the trust created by W.L. Moody, Jr. and is an appellee. The bank's brief does not take a position on the merits of this appeal and states that the bank will "abide by the final judgment on trust distribution issued in this case."

distribute the trust estate equally in 1/3 shares among Edna Moody, Virginia Moody, and Bill Moody. Under this interpretation, the Edna and Virginia Moody Appellants each receive a 1/6 undivided interest from Edna Moody's and Virginia Moody's respective 1/3 shares, computed as 1/3 multiplied by 1/2; the Bill Moody Appellees each receive a 1/12 undivided interest in the trust estate from Bill Moody's 1/3 share, computed as 1/3 multiplied by 1/4.

In contrast, the Bill Moody Appellees interpret the trust instrument to distribute the trust estate equally upon termination so that each of the remainder beneficiaries receives a 1/8 undivided interest in the trust estate.

The probate court interpreted the operative trust instrument language on cross-motions for traditional summary judgment under Texas Rule of Civil Procedure 166a(c). It granted summary judgment in favor of the Bill Moody Appellees and held that the remainder beneficiaries each receive an equal 1/8 undivided interest in the trust estate. The Edna and Virginia Moody Appellants challenge the probate court's grant of summary judgment in favor of the Bill Moody Appellees and the denial of the appellants' cross-motion for summary judgment.[3]

---

[3] The probate court's orders on the parties' cross-motions for summary judgment were severed into a document labeled as a "final and appealable judgment" on October 8, 2015. The Edna and Virginia Moody Appellants filed a joint notice of appeal on November 5, 2015. The October 8, 2015 judgment was not actually final because an unresolved issue regarding attorney's fees remained in the case. Therefore, the parties filed in this court an agreed motion to abate the appeal until the probate court signed a final judgment that resolved the amount and allocation of the parties' attorney's fees. This court granted the parties' agreed motion to abate, removed the case from the court's active docket, and instructed that the case would be reinstated "when the supplemental clerk's record is filed in this court." The probate court signed a final judgment on June 6, 2016, incorporating its prior orders on the cross motions for summary judgment and awarding attorney's fees. The supplemental clerk's record was filed with this court in June 2016 and this court reinstated the appeal on June 23, 2016. Appellant Haden Beardsley filed an amended notice of appeal on July 1, 2016. Appellants Edna Archer and Sarah Kathryn Pacheco did not file an amended notice of appeal. The premature joint notice of appeal filed by appellants Edna Archer, Sarah Kathryn Pacheco, and Haden Beardsley on November 5, 2015, when the judgment was not final nonetheless is effective to perfect an appeal from the subsequent final judgment signed on June 6, 2016. *See Brighton v. Koss*, 415 S.W.3d 864, 866 (Tex. 2013) (per curiam) ("When a party prematurely files a notice of appeal, our procedural rules treat the premature notice as filed subsequent to the order or judgment to which it applies."). The appellants do not challenge on appeal the trial court's award of attorney's fees to the Bill

## ANALYSIS

The Edna and Virginia Moody Appellants raise two issues on appeal contending that the probate court should have granted summary judgment in their favor and adopted their interpretation of the operative trust instrument language. In practical terms, adopting the appellants' interpretation means that their individual share size increases from 1/8 to 1/6 and the share size received by each of the Bill Moody Appellees decreases from 1/8 to 1/12.

This dispute arrives on appeal by way of cross-motions for traditional summary judgment. We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In a traditional motion for summary judgment, the movant must show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). When both parties move for summary judgment and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence. *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013). We may affirm the judgment, reverse and render a judgment for the other side if appropriate, or reverse and remand for further proceedings. *Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841, 847 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also In re Estate of Rhoades*, 502 S.W.3d 406, 416-18 (Tex. App.—Fort Worth 2016, pet. filed) (concluding that the trial court's interpretation of a will devise was in error; court reversed the trial court's judgment and remanded the case for further proceedings consistent with its opinion).

---

Moody Appellees. Therefore, we do not address attorney's fees.

## I. Standards Governing Interpretation of the Trust Instrument

"We interpret trust instruments the same way as wills, contracts, and other legal documents." *Myrick*, 336 S.W.3d at 802 (citing *Lesikar v. Moon,* 237 S.W.3d 361, 366 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)).

We look to the four corners of the trust instrument to ascertain the settlor's intent. *Id*. (citing *Hurley v. Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310-11 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). We presume the settlor placed nothing superfluous or meaningless in the trust instrument and that the settlor "intended every part, sentence, clause, and word to have a meaning and to play a part in the disposition of his property." *Marlin v. Kelly*, 678 S.W.2d 582, 587 (Tex. App.—Houston [14th Dist.] 1984), *aff'd*, 714 S.W.2d 303 (Tex. 1986); *see also PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 708 (Tex. App.—Dallas 2011, pet. denied) ("The use of different language in different parts of a contract generally means that the parties intended different things.").

The court's construction of a trust instrument should not "add to, subtract from, amend, correct, reform, revise, or rewrite" the language used in the instrument. *Parker v. Parker*, 131 S.W.3d 524, 531 (Tex. App.—Fort Worth 2004, pet. denied); *see also Kettler v. Atkinson*, 383 S.W.2d 557, 561 (Tex. 1964) ("[t]his court is not disposed to rewrite the will of the testatrix").

"The construction of a will or a trust instrument is a question of law for the trial court." *Hurley*, 98 S.W.3d at 310 (citing *Nowlin v. Frost Nat'l Bank,* 908 S.W.2d 283, 286 (Tex. App.—Houston [1st Dist.] 1995, no writ)). The goal in construing both wills and trusts is to ascertain the maker's intent. *Id*. (citing *Jewett v. Capital Nat'l Bank of Austin*, 618 S.W.2d 109, 112 (Tex. Civ. App.—Waco 1981, writ ref'd n.r.e.)). Unambiguous trust language that expresses the settlor's intent makes it unnecessary to construe the instrument because it speaks for itself. *Id.*

6

(citing *Jewett,* 618 S.W.2d at 112).

"A court should determine the intention of the testator from the language in the instrument." *Id*. (citing *Rekdahl v. Long,* 417 S.W.2d 387, 389 (Tex. 1967)). "A court should give effect to every part of the instrument if the language is reasonably susceptible to a harmonious construction." *Id*. (citing *O'Malley v. Stratton,* 831 S.W.2d 35, 37 (Tex. App.—El Paso 1992, no writ)).

We now apply these precepts to the disputed trust language.

## II.    Applying the Standards

Resolution of this appeal focuses primarily on Article II and Article III of the trust instrument. Article II governed distribution of the trust's net income to W.L. Moody, III, his children, and his grandchildren before the trust terminated. Article III governs distribution of the trust estate after it terminated in 2014 upon the death of W.L. Moody, III's last surviving child, Bill Moody.

Under Article III, W.L. Moody, III's grandchildren are remainder beneficiaries entitled to share in the trust estate at the trust's termination upon Bill Moody's death. Article III distributes the trust estate upon termination as follows:

> . . . [T]he Trustee shall, upon the termination of the Trust, distribute the Trust Estate *in equal shares per stirpes* to the then living grandchildren of William Lewis Moody, III, and the surviving issue of his deceased grandchildren.

(emphasis added). Our task is to determine the meaning of the phrase "in equal shares per stirpes" in Article III.

The Edna and Virginia Moody Appellants assert that this phrase in Article III requires an initial division of the trust estate into thirds among W.L. Moody, III's three children: Edna Moody, Virginia Moody, and Bill Moody. In turn, W.L. Moody, III's grandchildren share equally in the 1/3 interest of their respective

7

parents.

The Bill Moody Appellees assert that Article III's operative phrase mandates a per capita distribution of the trust estate to W.L. Moody, III's grandchildren, with an equal 1/8 distribution allocated to each grandchild. They contend that Article III's inclusion of the phrase "per stirpes" applies only to the distribution of a deceased grandchild's allotted 1/8 interest to the grandchild's descendants.

The parties agree that, if one of W.L. Moody, III's grandchildren died before the trust terminated and is survived by descendants, then the deceased grandchild's allotted interest is distributed per stirpes to his or her descendants.

We agree with the interpretation of Article III advanced by the Edna and Virginia Moody Appellants. The trust instrument is not ambiguous and we ascertain its meaning as a matter of law. *See Hurley*, 98 S.W.3d at 310. Article III's operative phrase "in equal shares per stirpes" requires an initial division of the trust estate in thirds among W.L. Moody, III's three children; W.L. Moody, III's grandchildren share equally in the 1/3 share of the sibling from whom they are descended. We reach this conclusion for the following reasons.

First, the Edna and Virginia Moody Appellants' interpretation is supported by the plain language of Article III's operative phrase.

"Per stirpes" is defined as "[p]roportionately divided between beneficiaries according to their deceased ancestor's share." *Per stirpes*, Black's Law Dictionary (10th ed. 2014). The grandchildren are descendants of W.L. Moody, III's three children: Edna Moody, Virginia Moody, and Bill Moody. By instructing that the trust estate be disbursed to W.L. Moody, III's grandchildren "in equal shares per stirpes," Article III contemplates a distribution to the grandchildren dependent on their deceased ancestor's share. *See id*. The deceased ancestors here are Edna

8

Moody, Virginia Moody, and Bill Moody. *See also In re Estate of Williams*, No. 08-98-00144-CV, 2000 WL 1053857, at *3 n.2 (Tex. App.—El Paso Aug. 1, 2000, no pet.) (not designated for publication) (citing Black's Law Dictionary definition of "per stirpes," court stated that "[t]he use of the term 'per stirpes' demonstrates the intent that the descendants . . . would take by representation"); *Parrish v. Mills*, 102 S.W. 184, 188 (Tex. Civ. App.—Austin 1907), *aff'd*, 101 Tex. 276 (Tex. 1908) (defined "per stirpes" as meaning "to take by stock or through a common source, and, when applied to estates, signifies that the particular descendants shall take among themselves the share of their deceased parent").

Second, the Edna and Virginia Moody Appellants' interpretation of Article III's operative phrase comports with an examination of the trust instrument as a whole.

Article II of the trust instrument distributed the trust's net income before termination as follows:

> . . . [T]he trustee shall pay over the net income from the Trust Estate semi-annually to William Lewis Moody, III, so long as he shall live; and after the death of William Lewis Moody, III, the Trustee shall pay over the net income from same semi-annually **in equal shares** to the present and any future children of [William Lewis Moody, III] during the lives of said children . . . .

> \* \* \*

> But if any such child [of William Lewis Moody, III] shall die leaving surviving issue, then such surviving issue shall succeed to and thereafter receive **per stirpes** their parent's share and interest in the Trust Estate.

(emphasis added). This provision in Article II mandated an equal per capita distribution of the trust's net income to Edna Moody, Virginia Moody, and Bill Moody while living. If Edna, Virginia, or Bill died, then this language required that

9

their share of net income pass per stirpes to their children.[4]

In essence, the Bill Moody Appellees assert that Article III distributes the trust estate upon termination to W.L. Moody, III's grandchildren in the same manner as Article II distributed the trust's net income to W.L. Moody, III's children before the trust terminated.

We disagree with this assertion because, unlike Article III's operative phrase "in equal shares per stirpes," Article II's net income clause separates the phrase "in equal shares" from the phrase "per stirpes" and in so doing prescribes an initial per capita distribution to the beneficiary class. In contrast to Article II, Article III's use of the combined phrase "in equal shares per stirpes" directs that the termination distribution to the beneficiary class is by ancestor, not per capita. The Bill Moody Appellees' interpretation of Article III's operative clause impermissibly rewrites Article III by divorcing the phrase "equal shares" from the phrase "per stirpes." We cannot rewrite Article III in this manner. *See Parker*, 131 S.W.3d at 531 (the court may not "reform, revise, or rewrite" an instrument's devise). This interpretation also makes an untenable assumption that Article II and Article III operate in the same manner even though the articles use different formulations to express the settlor's intent. *Cf. PopCap Games, Inc.*, 350 S.W.3d at 708 ("The use of different language in different parts of a contract generally means that the parties intended different things.").

Third, cases and secondary sources analyzing similar dispositive language provide additional support for the interpretation of Article III advanced by the Edna

---

[4] The Galveston County district court examined this provision in a separate proceeding and concluded that the trust's net income should be distributed per capita to W.L. Moody, III's children and per stirpes to the descendants of a deceased child. *The Moody Nat'l Bank of Galveston, Trustee v. Estate of W.L. Moody, III*, No. 92CV1142 (212th Dist. Ct., Galveston County, Tex. Sept. 14, 1998). This judgment was attached as an exhibit to appellant Sarah Kathryn Pacheco's motion for partial summary judgment.

10

and Virginia Moody Appellants.

We first look to *In re Estate of Williams*, 2000 WL 1053857, in which the wife's will devised 2/3 of her estate "to all [of the wife's] living or surviving brothers and sisters, and all of [her] husband's living or surviving brothers and sisters, in equal shares per stirpes, share and share alike." 2000 WL 1053857, at *1.

The court concluded that the dispositive language prescribed an initial division of the 2/3 devise between the husband's siblings and the wife's siblings, with the siblings sharing equally in their ancestor's 1/3 share. *Id*. at *3. Similarly, Article III's use of the phrase "in equal shares per stirpes" directs a distribution by line of descent, not per capita, and prescribes an initial division of the trust estate among W.L. Moody, III's three children. *See also In re Hickey's Estate*, 73 N.Y.S.2d 508, 511, 516 (N.Y. Sur. Ct. 1939) (will devised estate to "the children of my said daughter, [name], and the children of my said son, [name], . . . to be divided between them equally, *per stirpes*;" court held that devise distributed the estate so that "one half share [of the estate] shall be maintained among the children of each group" (emphasis in original)).

The Restatement (Second) of Property also supports the Article III interpretation advanced by the Edna and Virginia Moody Appellants. It concludes that a "per stirpes" class distribution requires a distribution by ancestor:

> If a gift is made to the "grandchildren" of a designated person "per stirpes," the described class members stem from different children of the designated person. In such case, ***the words "per stirpes" suggest an initial division of the subject matter of the gift into shares, one share for the children of each child of the designated person***, thereby overcoming the per capita division otherwise called for by the rules of this section.

Restatement (Second) of Prop.: Donative Transfers § 28.1 cmt. i. (1988) (emphasis added).

The Restatement example mirrors the distribution at issue here: Article III's termination clause distributes the trust estate to the grandchildren of W.L. Moody, III "in equal shares per stirpes." The grandchildren stem from W.L. Moody, III's three children: Edna Moody, Virginia Moody, and Bill Moody. Accordingly, the trust estate initially is divided into three shares for each of W.L. Moody, III's children, and the grandchildren share equally in the 1/3 interest of the sibling from whom they are descended. *See id*.

The Texas Practice Guide provides another example that supports the Edna and Virginia Moody Appellants' interpretation of Article III:

> F leaves Blackacre to the children of A, B, and C, per stirpes. A has one child, B has two children, and C has three children. Thus, Blackacre will be divided into three equal parts, one share for each of the A, B, and C's children. A's children will receive one share, or one-third of Blackacre. B's children will receive jointly one share, or one-sixth each, of Blackacre. C's children will receive jointly one share, or one-ninth each, of Blackacre.

Ronald R. Cresswell, Patrick J. Pacheco & Sarah P. Pacheco, Tex. Practice Guide: Wills, Trusts and Estate Planning § 4:241 (2016). Here too, the trust estate was left to the grandchildren of W.L. Moody, III, and "per stirpes" designates a distribution by line of descent.

The Bill Moody Appellees rely heavily on *Ladd v. Whitledge*, 205 S.W. 463 (Tex. Civ. App.—Amarillo 1918, writ ref'd), to support their competing interpretation of Article III's termination clause. *Ladd* does not control here because the dispositive language analyzed in *Ladd* did not include a per stirpes distribution; instead, it directed a distribution to the beneficiaries "to share alike in equal proportional parts." *Id*. at 463, 465.

We sustain the Edna and Virginia Moody Appellants' issues because their interpretation of Article III's operative phrase is supported by the termination

clause's plain language, the trust instrument as a whole, and cases and secondary sources analyzing similar dispositive language.

## CONCLUSION

We hold that Article III's operative phrase "in equal shares per stirpes" requires an initial division of the trust estate among the three children of W.L. Moody, III. The grandchildren of W.L. Moody, III share equally based upon the 1/3 share of the sibling from whom they are descended. We reverse the probate court's June 6, 2016 final judgment and remand the case to the trial court for further proceedings consistent with our holding. *See In re Estate of Rhoades*, 502 S.W.3d at 418.


/s/     William J. Boyce
         Justice


Panel consists of Justices Boyce, Jamison, and Brown.