**Affirmed in Part, Reversed in Part, and Remanded; and Memorandum Opinion filed January 21, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00094-CV
### NO. 14-18-00095-CV

---

## ELAINE T. MARSHALL AND E. PIERCE MARSHALL JR., Appellants

## V.

## PRESTON MARSHALL, Appellee

---

**On Appeal from the Probate Court No. 4**
**Harris County, Texas**
**Trial Court Cause No. 365053-401; 365053-402**

---

## MEMORANDUM OPINION

In this family dispute regarding a will and several trusts, Preston Marshall sued his mother Elaine T. Marshall and brother E. Pierce Marshall Jr. Preston alleged breaches of fiduciary duty and sought a declaratory judgment that, among other things, Elaine and Pierce violated an *in terrorem* clause of the will. Elaine and Pierce appeal the denials of their motions to dismiss under the Texas Citizens

Participation Act (TCPA).[1]  We reverse in part the trial court's denials of the motions because Preston has not established a prima facie case for a declaratory judgment that Elaine and Pierce violated the *in terrorem* clause.  We affirm the remainder of the orders.

## I.  BACKGROUND

### A.  The Texas Trust

Through his last will and testament, E. Pierce Marshall settled the EPM Marital Income Trust (the "Texas Trust") and named his wife Elaine the trustee and income beneficiary.  Two inter vivos trusts that E. Pierce Marshall had created for the benefit of his sons individually (i.e., Preston and Pierce Jr.) are equal principal beneficiaries of the Texas Trust.  According to the will, the primary purpose of the Texas Trust is the financial security of Elaine.  Relevant to the issues in this case, the will includes provisions regarding the powers of the trustee, the selection of successor trustees, the choice of law applicable to the trust, and an *in terrorem* clause.

Under Article IX of the will, the trustee of the Texas Trust is granted broad discretionary powers to change the situs of the trust and to divide or merge the trust, provided that any "division, merger, or consolidation is not inconsistent with my intent for any such trusts, facilitates administration of the trusts, and would be in the best interest of all beneficiaries and not materially impair their respective interests."

Article III.C of the will governs the successorship of the trustee.  Preston is identified as the successor trustee if Elaine ceases to serve as the trustee.  And if Preston fails or ceases to serve as trustee, then E. Pierce Marshall's descendants

---

[1] *See* Tex. Civ. Prac. & Rem. Code ch. 27; *see also In re Lipsky*, 460 S.W.3d 579, 584 & n.1 (Tex. 2015).

who are the age of majority shall select an independent person or persons for the office. If the descendants do not agree, then the American Arbitration Association shall select a successor trustee from the nominees of those descendants.

Article XI provides that the will and testamentary trusts are governed by the law of the State of Texas. Article X includes an *in terrorem* clause, which appears in part as follows:

> If any beneficiary under this will or under any Trust created by this Will shall contest the probate or validity of this Will, or any provision thereof, or shall institute, provide financial support for, or join in (except as a party defendant) any proceeding to contest the validity of this Will or to prevent any provisions hereof from being carried out in accordance with its terms (regardless of whether or not such proceedings are instituted in good faith and with probable cause), then all gifts, fiduciary appointments, or other benefits (collectively, the "Benefits") provided for such beneficiary hereunder are revoked, and all such Benefits shall pass to the persons who would receive Benefits under the provisions of this Will as if such contesting party predeceased me.

## B. The Wyoming Trust

In 2014, Elaine merged the Texas Trust into a new trust in Wyoming. In furtherance of this plan, she formed the EPM Purpose Trust and the EPM Fiduciary Service Company, LLC (the "Company"). Elaine is the protector of the EPM Purpose Trust, and the Company is the trustee. As the protector, Elaine has the power to appoint trustees and a successor protector; Pierce is designated as the default successor protector. The purpose of the EPM Purpose Trust is to assist in the organization of the Company and to hold membership interests in the Company. Elaine is the manager and president of the Company, and Pierce is the secretary and treasurer.

3

Elaine and the Company then created the EPM Marital Income Trust (the "Wyoming Trust") and merged the Texas Trust into the Wyoming Trust, with the Wyoming trust to be the "surviving trust." Elaine and the Company are co-trustees of the Wyoming Trust.

Like the Texas Trust, the primary purpose of the Wyoming Trust is to provide for the financial security of Elaine. Also like the Texas Trust, upon Elaine's death the corpus will be distributed in equal amounts to the two inter vivos trusts that E. Pierce Marshall had created for the benefit of Preston and Pierce individually.

However, the Wyoming Trust's provisions regarding successor trustees, choice of law, and an *in terrorem* clause differ from the provisions in E. Pierce Marshall's will. Under Article 5 of the Wyoming Trust, the trustee may appoint successor trustees. If Elaine ceases to serve as a trustee, no successor trustee shall be appointed, and the Company shall serve as the sole trustee. Under Article 6, the trust is to be governed by the laws of the State of Wyoming. And, Article 10 includes an *in terrorem* clause, which provides in part that if any person:

> directly or indirectly contests or attacks this Declaration or the Merger Agreement or any trust or beneficial interest created hereunder or thereunder, . . . then such person is specifically disinherited; all interests and properties given to or created for the benefit of such person, directly or in trust, under this Declaration shall be forfeited, and such property shall be disposed as if such person had predeceased E. Pierce Marshall.

## C.    The Wyoming Settlement Agreement and Petition for Instructions

With the creation of the Wyoming Trust, Elaine also executed a non-judicial settlement agreement between the trustees and all qualified beneficiaries of the Texas Trust and Wyoming Trust. Only Elaine signed the document, and she signed it five times in the following capacities: (1) as trustee of the Wyoming

4

Trust, on behalf of the Company; (2) as trustee of the Texas Trust; (3) as a qualified beneficiary; and (4) as a trustee of each of the inter vivos trusts benefiting Preston and Pierce, each of which is designated a qualified beneficiary.

The purpose of the agreement is to agree to apply Wyoming laws governing trust construction and administration, adopt the Wyoming Uniform Trust Code, merge the Texas Trust into the Wyoming Trust, divide the Wyoming Trust into two separate trusts, and "agree regarding a procedure for obtaining court approval hereof." The provision regarding court approval states that under Wyoming law an agreement such as this one "may be submitted by any interested person to a court for approval and to determine whether the representation of all potential future contingent beneficiaries is adequately protected." The parties agreed that the trustee of the Wyoming Trust would take action to seek approval in a Wyoming district court. The qualified beneficiaries agreed to waive all notice of the petition, the right to service of process, and the right to answer, object, or otherwise respond to the petition.

The Company filed a "petition for instructions" in a Wyoming court and alleged that the merger of the Texas Trust and Wyoming Trust and subsequent division of the Wyoming Trust would affect only the governing law and trusteeship of the trusts and would not enlarge or diminish the beneficial interest of any beneficiary. The Company attached as an exhibit Elaine's "Affidavit, Acceptance of Service, and Consent to Proceed." In the affidavit, Elaine testified that she consented to the modifications of the trusts "[a]s such beneficiary and trustee." The Wyoming court signed an order granting the petition and ordered, among other things, that the settlement agreement was "confirmed, and the Petitioner [was] authorized to undertake the merger of the Trusts and the division of the surviving Wyoming Trust as described therein."

## D.      Preston's Lawsuits and Motions to Dismiss

In the cases that are the subject of this appeal, Preston filed two lawsuits against Elaine and Pierce.  In each case, Preston sought declarations that Elaine and Pierce violated Article X of the will, i.e., the *in terrorem* clause.[2]  Also in each case, Preston alleged that Elaine breached her fiduciary duties.  In Cause No. 365053-401 (the "401 Case"), Preston alleged that Pierce aided and abetted Elaine's breach of fiduciary duty.  Preston alleged, among other facts, that Elaine "had [the Company] bring a sham lawsuit for purposes of ratifying and approving her actions."  Noting that Elaine "consented" to the Wyoming lawsuit by signing an affidavit, Preston alleged, "By consenting to a proceeding in Wyoming to ratify the modifications to the [Texas Trust], Mrs. Marshall violated Article X of Decedent's Will."  In Cause No. 365053-402 (the "402 Case"), Preston alleged that Pierce breached fiduciary duties owed to Preston as a co-beneficiary by "participating" in Elaine's breaches of trust.  Preston alleged, among other facts, that Elaine and Pierce "had [the Company] bring a sham lawsuit in Wyoming for purposes of approving and ratifying her actions."

Elaine and Preston separately filed motions to dismiss in each case.  Elaine sought the dismissal of any no contest (i.e., *in terrorem*) clause claims against her; she did not challenge any other claims.  Pierce sought dismissal of the *in terrorem* claims and the fiduciary duty claims against him.  The trial court denied the motions, and Elaine and Pierce filed separate appeals in each case.

---

[2] Preston expressly requested these declarations in his fifth amended petition in Cause No. 365053-401.  However, in Cause No. 365053-402, Preston requested this declaration for Pierce in the second amended petition but did not expressly request this declaration for Elaine.  In her motion to dismiss in Cause No. 365053-402, Elaine acknowledges the absence from the petition of an express request for this declaration but notes a broad request for declaratory relief in the petition.  Preston's response to Elaine's motion appears to acknowledge that he made such a request for a declaration based on the *in terrorem* clause in Cause No. 365053-402. Accordingly, we treat the petition as raising this claim.

6

## II.   LEGAL PRINCIPLES FOR TCPA

Several legal principles regarding the TCPA apply to both of the appeals. To be entitled to dismissal under the TCPA, the defendant has the initial burden to show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to" the defendant's exercise of the right to petition, association, or speech.  *See In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015); *see also* Act of May 18, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961 (codified as amended at Tex. Civ. Prac. & Rem. Code § 27.005(b)).[3]  A court may determine the basis of the legal action by looking to the plaintiff's allegations, not by considering the defendant's admissions or denials.  *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

If the defendant satisfies this initial burden, the burden shifts to the plaintiff to establish by clear and specific evidence a prima facie case for each essential element of the claim in question.  *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017).  To establish a prima facie case, a plaintiff must provide enough detail to show the factual basis for its claim.  *In re Lipsky*, 460 S.W.3d at 591.

An "exercise of the right to petition" means, among other things, "a communication in or pertaining to . . . a judicial proceeding."  Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(i).  An "exercise of the right of association" means "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."  *Id.* § 27.001(2).  A "communication" is broadly defined as "the making or submitting of a statement or

---

[3] The Legislature amended the TCPA in 2019, but the amendment does not apply to these cases, which were filed before September 1, 2019.  *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 3, 11–12, 2019 Tex. Sess. Law Serv. Ch. 378 (West).  Any citations to the TCPA in this opinion are to the version of the statute in effect when Preston brought these actions.

document in any form or medium." *Id.* § 27.001(1); *see also Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

In deciding whether a legal action should be dismissed, courts consider the pleadings and affidavits. Tex. Civ. Prac. & Rem. Code § 27.006(a). Whether the parties have met their respective burdens is a question of law that we review de novo. *Nunu v. Risk*, No. 14-19-00564-CV, 2020 WL 6203193, at *10 (Tex. App.—Houston [14th Dist.] Oct. 22, 2020, no pet. h.) (citing *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019)).

The purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002. Thus, the purpose is to dispose of lawsuits that are designed to chill First Amendment rights, not to dismiss meritorious claims. *In re Lipsky*, 460 S.W.3d at 589. The TCPA should be construed liberally to effectuate its purpose. Tex. Civ. Prac. & Rem. Code § 27.001(b).

### III. ELAINE'S APPEAL

In two issues, Elaine contends that the TCPA applies to Preston's *in terrorem* claims and that Preston has failed to establish a prima facie case for each essential element of the claims. We agree with Elaine.

### A. TCPA Applies

Elaine contends that the TCPA applies to Preston's claims seeking Elaine's disinheritance based on the *in terrorem* clause because the claims implicate Elaine's right to petition.

Just as the TCPA applies to a claim related to the making of a statement in open court, *see Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018), it also applies if the claim relates to the defendant's affidavit testimony submitted to a court. *See Beving v. Beadles*, 563 S.W.3d 399, 406 (Tex. App.—Fort Worth 2018, pet. denied); *see also Brann v. Guimaraes*, No. 01-19-00439-CV, 2020 WL 5414980, at *5–6 (Tex. App.—Houston [1st Dist.] Sept. 10, 2020, no pet. h.) (mem. op.) (claim based on providing false testimony implicated right to petition). Moreover, Preston alleged that Elaine violated the *in terrorem* clause by instituting or joining in a "proceeding" to contest the will, and this proceeding was a "lawsuit" in Wyoming. Under the plain terms of the statute, the filing of a petition and an affidavit are communications in or pertaining to a judicial proceeding, and thus, implicate Elaine's exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(i); *see also Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.) (filing of a lawsuit is exercise of the right to petition under the TCPA).

Preston contends on appeal, however, that the Wyoming lawsuit was "just one of the many bases Preston has for alleging that Mrs. Marshall violated the *in terrorem* clause," and that her "actions pre-dating the sham Wyoming lawsuit violate the *in terrorem* clause." Preston cites no legal authority to support this argument or to explain its implication on the resolution of this appeal. *See* Tex. R. App. P. 38.1(i), 38.2(a)(1). Preston identifies Elaine's conduct such as creating the Company to help facilitate the transfer of the Texas Trust assets, merging the Texas Trust with the Wyoming Trust, entering into the non-judicial settlement agreement, attempting to divide the Wyoming Trust into two trusts, and other conduct unrelated to a judicial proceeding. These alleged acts fall outside the scope of the term "proceeding," as that term would be understood in the *in*

9

*terrorem* clause. *See Proceeding*, Black's Law Dictionary (11th Ed. 2019, Westlaw) (defined in part as "1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of a judgment. 2. Any procedural means for seeking redress from a tribunal or agency"); *Proceeding*, Dictionary by Merriam-Webster, https://www.merriam-webster.com/dictionary/proceeding (last visited Nov. 2, 2020) (defined as "legal action"). A fair reading of the petitions does not include these acts as supporting the *in terrorem* claims, but they relate to Preston's breach of fiduciary duty claims, which Elaine did not challenge in the motion to dismiss.[4]

In sum, Elaine established by a preponderance of the evidence that Preston's *in terrorem* claim is based on, relates to, or is in response to Elaine's exercise of the right to petition.

## B.    No Prima Facie Case

Preston contends that the Company's Wyoming "petition for instructions," and Elaine's consent to it, triggered the *in terrorem* clause because it was a "proceeding . . . to prevent any provisions [of the will] from being carried out in accordance with its terms." Preston identifies three provisions of the will that the Wyoming proceeding undermined: (1) removing Preston as the designated successor trustee and authorizing Pierce to be the successor trustee; (2) changing the governing law from Texas to Wyoming; and (3) introducing a different *in terrorem* clause. Preston has not identified any evidence to support a contention that the changes Elaine sought would have affected Preston's potential inheritance. Nor does Preston cite any case law to suggest that a beneficiary, who also serves as

---

[4] After this appeal was perfected, the trial court granted a partial summary judgment in Preston's favor, ruling that Elaine "committed a breach of trust by attempting to merge the [Texas Trust] with the [Wyoming Trust] and subsequently attempting to divide the Wyoming Trust."

trustee, violates an *in terrorem* clause by seeking to alter administrative terms of a trust that do not affect the beneficiaries' interests in the corpus.

When construing a will, courts focus on the testator's intent, which must be ascertained from the language found within the four corners of the will if possible. *ConocoPhillips Co. v. Ramirez*, 599 S.W.3d 296, 301 (Tex. 2020). Generally, the purpose of an *in terrorem* clause is to dissuade beneficiaries from filing vexatious litigation, particularly among family members, that might thwart the intent of the testator. *See Di Portanova v. Monroe*, 402 S.W.3d 711, 715–16 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (noting that courts "narrowly construe *in terrorem* clauses to avoid forfeiture"). An *in terrorem* clause is strictly construed, and courts should find a breach of the clause only when the acts of the party come within the clause's express terms. *Badouh v. Hale*, 22 S.W.3d 392, 397 (Tex. 2000); *see also Sheffield v. Scott*, 662 S.W.2d 674, 676 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (noting that forfeiture under an *in terrorem* clause "is to be avoided if possible, and only where the acts of the parties come strictly within the express terms of the punitive clause of the will may a breach thereof be declared"). Generally, whether a beneficiary's actions trigger an *in terrorem* clause is a question of law. *See Estate of Cole*, No. 02-13-00417-CV, 2015 WL 392230, at *8 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (mem. op.); *see also Archer v. Moody*, 544 S.W.3d 413, 417 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (noting that the construction of a will or trust instrument is a question of law).

Our sister court in *Di Portanova v. Monroe* provides guidance for the resolution of this case. In that case, the defendant brought a legal proceeding to make administrative changes to the trusts that included reducing the number of trusts and changing the trust provisions regarding the appointment and

11

compensation of successor trustees.  *See id.* at 718–19.  The proceeding resulted in a modification of who could appoint the successor trustee, which was "neither authorized by the trust or by the Probate Code."  *Id.* at 719.  The court noted that no Texas case has construed an *in terrorem* clause so broadly as to result in forfeiture under those or similar circumstances.  *See id.*  For example, courts have held that *in terrorem* clauses that prohibited beneficiaries from directly or indirectly contesting or attacking "any" provisions of wills or trusts were not violated when beneficiaries sued to remove an executor or trustee.  *See id.* at 717–18 (citing *Conte v. Conte*, 56 S.W.3d 830, 831–32 (Tex. App.—Houston [1st Dist.] 2001, no pet.), and *Estate of Newbill*, 781 S.W.2d 727, 728–29 (Tex. App.—Amarillo 1989, no writ)).

Like in those cases, none of the changes that Elaine consented to in the Wyoming proceeding had a substantive effect on the distribution of E. Pierce Marshall's property.  Elaine continued to be the income beneficiary, and the inter vivos trusts remained beneficiaries of the corpus.  As Preston alleged in his petition, the Wyoming suit had the purpose of "ratifying" the actions Elaine took as trustee **before** filing the petition for instruction.  By the time the Company filed the petition, the Company and Elaine already entered into a non-judicial settlement agreement to, among other things, merge the two trusts.  The Wyoming Trust had been created, and that trust's declaration includes the terms that Preston complains of.  The Wyoming proceeding sought a construction of the will and trusts to determine if Elaine's prior acts as trustee were lawful.  Therefore, the proceeding was not one to contest the validity of the will or to prevent any provisions of it from being carried out.  *See Ferguson v. Ferguson*, 111 S.W.3d 589, 599 (Tex. App.—Fort Worth 2003, pet. denied) ("We decline to interpret the [*in terrorem*] clause as extending to a declaratory judgment proceeding brought by

12

representative of an estate in his official capacity to interpret a settlement agreement and agreed judgment entered into in that capacity on behalf of the estate, even though he may also be an heir or devisee."); *see also* Tex. Estates Code § 254.005 (recognizing enforceability of forfeiture clauses, but noting that such clauses generally will not be construed to prevent a beneficiary from seeking a judicial construction of a will or trust).

Considering the purpose of the Texas Trust and the nature of the Wyoming proceeding, we conclude that Preston has not established a prima facie case for his claims against Elaine based on the *in terrorem* clause.

## C.     Timeliness

As an alternative basis for affirming the trial court's ruling in the 401 Case, Preston contends that Elaine's motion was untimely because Elaine had fair notice of his claim from an earlier petition—his fourth amended petition. *See generally* Tex. Civ. Prac. Code § 27.003(b) (motion to dismiss must be filed not later than the sixtieth day after the date of service of the legal action). Elaine contends that Preston's fifth amended petition added a new claim and factual allegations based on the *in terrorem* clause, so her motion, which she filed within sixty days of service of the fifth amended petition, was timely.

When a plaintiff files an amended petition that does not add new claims, the deadline for filing a motion to dismiss does not restart. *Petrobras Am. Inc., v. Astra Oil Trading NV*, No. 14-18-00728-CV, 2020 WL 4873226, at *24 (Tex. App.—Houston [14th Dist.] Aug. 20, 2020, no pet.) (mem. op.). But when a plaintiff asserts new claims based on new factual allegations, the TCPA deadline restarts for the newly added substance. *See id.*; *Jordan v. Hall*, 510 S.W.3d 194, 198–99; (Tex. App.—Houston [1st Dist.] 2016, no pet.); *cf. James v. Calkins*, 446 S.W.3d 135, 146 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (TCPA

13

applied to amended petition filed after the statute's effective date because the amended petition included substantively different factual allegations and new claims).

In his fourth amended petition, Preston referred to Elaine making the Company "bring a sham lawsuit for the purposes of ratifying and approving her actions," but Preston did not refer to the *in terrorem* clause and did not assert a request for a declaratory judgment that Elaine violated the *in terrorem* clause. In his fifth amended petition, Preston included about five pages of new factual allegations under the heading "Mrs. Marshall violates Article X of the Will," and Preston for the first time sought a specific declaration that "Mrs. Marshall has violated Article X of Decedent's Will and all bequests to her are revoked." These additions amount to a new claim based on new factual allegations related to the *in terrorem* clause. Thus, Elaine's motion to dismiss, filed within sixty days of the service of the fifth amended petition, was timely.

## D.    Summary

Having concluded that Elaine's TCPA motion in the 401 Case was timely, that the TCPA applies, and that Preston failed to establish a prima facie case, we hold that the trial court erred by denying Elaine's motions to dismiss Preston's claims based on the terrorem clause.

Elaine's issues are sustained.

## IV.    PIERCE'S APPEAL

In a single issue, Pierce contends that the TCPA applies to Preston's *in terrorem* and breach of fiduciary duty claims against Pierce, and Preston has not established a prima facie case for each element of the claims. We agree with Pierce regarding the *in terrorem* claims but not the fiduciary duty claims.

14

## A.     TCPA Applies to *In Terrorem* Claims, Not Fiduciary Duty Claims

Pierce contends that the TCPA applies to Preston's *in terrorem* claims and fiduciary duty claims because the claims relate to Pierce's rights to petition and association.[5]

Preston acknowledges that his *in terrorem* claims are based on allegations that Pierce instituted, provided financial support for, or joined in any "proceeding" to contest the validity of the will or to prevent any provisions from being carried out in accordance with its terms.  As discussed above regarding Elaine's appeal, a "proceeding" is a legal action, and Preston alleged that Pierce and Elaine "had [the Company] bring a sham lawsuit."   The nature of the claim and Preston's allegations show that the TCPA applies to Preston's *in terrorem* claims because the claims relate to Pierce's communication in or pertaining to a judicial proceeding— his right to petition.  *See Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.— Austin 2015, no pet.) (filing of a lawsuit is exercise of the right to petition under the TCPA).

Regarding Preston's fiduciary duty claims, Pierce cites no analogous case law and does not analyze the claims separately from the *in terrorem* claims.  In his petitions, Preston made many factual allegations that were unrelated to the filing of a "sham lawsuit"—namely, the merger of the Texas Trust into the Wyoming Trust and the division of the Wyoming Trust.  Preston based his fiduciary duty claim on these grounds, for example, in the 402 Case:

- "Pierce Jr. instigated and/or persuaded Mrs. Marshall to commit a breach of trust against Preston by covertly attempting to

---

[5] Although Pierce argued in the motions to dismiss that Preston's claims related to Pierce's right to speech, and he reiterated this argument in his reply brief on appeal, he did not raise this argument in his opening brief on appeal.  It is, therefore, waived.  *See Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

15

merge the [Texas Trust] into the Wyoming Trust and then splitting the Wyoming Trust into [two trusts]."

- "By participating in Mrs. Marshall's breaches of trust, Pierce Jr. breached his duties to his co-beneficiary, Plaintiff."

The vast majority of the allegations in Preston's petitions concern Elaine's conduct unrelated to the Wyoming lawsuit. Under these circumstances, we cannot conclude that Pierce has established by a preponderance of the evidence that Preston's allegations regarding the fiduciary duty claims relate to Pierce's right to petition. If a legal action relates to both protected and unprotected activity under the TCPA, the claim is subject to dismissal only to the extent that it is in response to the protected conduct, as opposed to being subject to dismissal in its entirety. *Navidea Biopharm., Inc. v. Captial Royalty Partners II*, No. 14-18-00740-CV, 2020 WL 5087826, at \*4 (Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.). If a TCPA movant like Pierce "does not provide guidance as to how to determine which claims are in response to protected rather than unprotected conduct, and the courts are unable to identify a means to accomplish the task, our sister courts have concluded that the trial court does not err by denying the motion." *Id.* (upholding denial of TCPA motion because this court did not see a practicable way to parse out the degree to which the plaintiff sought a declaration based on protected communications concerning existing litigation or unprotected communications, and the movant did not provide any guidance on the issue).

Pierce also contends that the fiduciary duty claims relate to his right of association. Pierce noted in his motions to dismiss that Preston alleged Pierce "instigated and/or persuaded Mrs. Marshall to commit a breach of trust." Pierce argued in the motions that Preston's allegations were based on communications

between Pierce and Elaine, who had joined together to pursue a "common interest" in the "Wyoming merger."

The TCPA's definition of the "exercise of the right of association" does not encompass all communications in furtherance of a civil conspiracy or to commit tortious acts. *See Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 653 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). To do so would be to construe the right of association in isolation from the Legislature's twin purposes of protecting constitutional rights and the right to file meritorious lawsuits. *Id.* Reading the TCPA as broadly as envisioned by Pierce would thwart a meritorious lawsuit any time a plaintiff alleges two or more persons jointly committed a tort. *Id.* "Applying the statute based on a distinction 'hinging on whether a single tortfeasor or multiple tortfeasors acted' thus would be an anomaly leading to absurd results." *Id.* (quoting *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 584 (Tex. App.—Fort Worth 2019, pet. denied) (applying the dictionary definition of "common" such that the "common interests" required by the TCPA must be "shared by the public or at least a group"; reasoning that the right of association in the TCPA "requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit"; affirming denial of motion to dismiss a claim for conspiracy to breach fiduciary duty because TCPA did not apply)); *see also Segundo Navarro Drilling, Ltd. v. San Roman Ranch Mineral Partners, Ltd.*, No. 04-19-00484-CV, 2020 WL 4808716, at *4 (Tex. App.—San Antonio Aug. 19, 2020, pet. denied) (agreeing with *Kawcak*); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 473–76 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc) (agreeing with and extending *Kawcak*; "the proper definition of 'common' in the phrase 'common interest' is 'of or relating to a community at large: public'"). Pierce has not shown how the Wyoming merger was a "common interest," as that

17

term has been interpreted by Texas courts, such that communications among joint tortfeasors should be protected under the TCPA. *See Segundo Navarro*, 2020 WL 4808716, at *4; *Gaskamp*, 596 S.W.3d at 473–76; *Kawcak*, 582 S.W.3d at 584; *see also Bandin*, 590 S.W.3d at 653.

In sum, although the TCPA applies to Preston's claims based on the *in terrorem* clause, Pierce has not shown by a preponderance of the evidence that the TCPA applies to Preston's fiduciary duty claims.

## B. No Prima Facie Case for *In Terrorem* Claims

For the reasons discussed above in Part III.B of this opinion regarding Elaine's appeal, Preston has failed to establish a prima facie case for his *in terrorem* claims. That is, the Wyoming proceeding did not seek to contest the validity of the will or to prevent any provisions of it from being carried out.

Moreover, the only evidence that Preston identifies to support his allegation that Pierce "had [the Company] bring a sham lawsuit in Wyoming" or "authorized" Elaine's joining in the proceeding is that Pierce relayed Elaine's authorization for the Wyoming proceeding to Elaine's lawyer.[6] This evidence does not establish a

---

[6] Preston points to the following testimony from Elaine's lawyer:

Q. Did Mrs. Marshall authorize you to file the petition for instructions that is set forth here as Exhibit 5?
A. I was authorized to file it.
Q. By Mrs. Marshall?
A. By—not direct communication with her, by communicating with co-counsel.
Q. But you understood her to be authorizing the filing of this?
A. I understood I had authority to file it, yes.
O. From Mrs. Marshall?
A. I understood it was a desire of my client, yes.
Q. Who is your client?
A. Elaine Marshall was my client.
O. And so was she authorizing you to file the document in your understanding?
A. My understanding was it had been authorized by her.
O. Who as co-counsel communicated to you her authority?

prima facie case that Pierce instituted, provided financial support for, or joined in the Wyoming proceeding.

## C. Summary

Pierce has shown by a preponderance of the evidence that the TCPA applies to Preston's requests for declaratory judgments based on the *in terrorem* clause. But, Pierce has not shown that the TCPA applies to Preston's breach of fiduciary duty claims. Because Preston failed to establish a prima facie case for the *in terrorem* claims, we hold that the trial court erred in part by denying Pierce's motions to dismiss the *in terrorem* claims. The trial court did not err by denying Pierce's motions to dismiss the fiduciary duty claims.

Pierce's issue is sustained in part.

## V. CONCLUSION

The trial court's orders denying Elaine's motions to dismiss are reversed. The trial court's orders denying Pierce's motions to dismiss are reversed in part regarding Preston's claims based on the *in terrorem* clause, but the remainder of the orders denying Pierce's motions to dismiss the fiduciary duty claims are affirmed. The cases are remanded to the trial court for further proceedings. *See, e.g.*, *Cox Media Group, LLC v. Joselevitz*, 524 S.W.3d 850, 865–66 (Tex. App.—Houston [14th Dist.] no pet.).

/s/    Ken Wise
Justice

---

A. I had communications with members of the Hunter firm and with Pierce Marshall.
Q. Pierce Marshall, Jr.?
A. Pierce Marshall, Jr., yes.

19

Panel consists of Justices Wise, Jewell, and Poissant.